**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDMUND SNIPES, | |
| Appellant | No. 742 EDA 2015 |

Appeal from the Judgment of Sentence of November 7, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011799-2011

BEFORE: MUNDY, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 09, 2016**

Appellant, Edmund Snipes, appeals from the judgment of sentence entered on November 7, 2014.[1]  We affirm.

The trial court summarized the pertinent facts and trial testimony as follows:

> On September 26, 2011, the complainant, Reginald Stewart, walked to a Chinese store on Germantown Avenue to buy something to eat.  When he was outside of the Chinese store, he observed Marquita Lee who alerted him that [Appellant] had a gun.  As Stewart turned around, he observed [Appellant] and his fiancée, Cassaundra Hawkins.  [Appellant] then removed a gun from the waistband of his gym shorts and pointed it in Stewart's face. Stewart identified the gun as a small

_____

[1] Appellant's judgment of sentence was made final when the trial court, on January 17, 2015, denied his motion for reconsideration.

*Retired Senior Judge assigned to the Superior Court.

revolver. [Appellant] said to Stewart, "What's up now, old head."

As [Appellant] and Stewart were arguing, Philadelphia Police Officer Rose Dangler was driving by and pulled over to investigate. After determining there were no issues, Officer Dangler left. After Officer Dangler left, Stewart started to walk away from [Appellant]. As he walked away, he screamed, "I can' t believe ya'll acting like this. I don't owe you money, you don't owe me money." In response, [Appellant] ran toward Stewart, pushed his head down toward the sidewalk, and shot him five times. Four of those gunshots skimmed his head and one entered his leg. After he was shot, Stewart identified [Appellant] to the police as the shooter.

\*\*\*

More than a month before the shooting, [] Stewart [performed] contracting work for Hawkins, including fixing her concrete steps. Thirty days before the shooting, Hawkins and Stewart argued over payment for Stewart's contracting work for Hawkins. At trial, Hawkins testified that—one month before the shooting—Stewart "got boisterous" about asking for his money, so she told [Appellant] to come downstairs to speak to him. Hawkins also testified that, on the night of the shooting, [Appellant] confronted Stewart about payment for the steps.

\*\*\*

After shooting Stewart, [Appellant] went back to his house where he changed clothes. [] Hawkins testified that after she heard gunshots, [Appellant] ran to their house, went upstairs and changed his clothes.

\*\*\*

At trial, [Appellant] testified consistently with Stewart and Hawkins except as to who had the gun, how the shooting began, and how Stewart was shot. For example, [Appellant] confirmed that Stewart used to perform odd jobs around the house, such as cleaning up weeds that were too tall. Approximately one month before the shooting, Stewart worked on concrete steps for Hawkins. [Appellant] further testified that, before he completed the

- 2 -

concrete job, Stewart asked Hawkins for money that he was owed for repairing a concrete step. Hawkins told [Appellant] to speak to Stewart because he was getting "too disrespectful." [Appellant] told Stewart that although the job was $50[.00], Stewart would receive the other half of the money when the job was completed. Stewart responded by cursing at [Appellant].

On the night of the shooting, [Appellant] and Hawkins were walking to a bank on Germantown Avenue. As [Appellant] passed by a Chinese store, [Appellant] testified that he was pulled aside by Stewart who asked him, "Yo big man, what's up with the rest of my money?" [Appellant] did not reply to Stewart, but instead waited for Hawkins, who was inside the Chinese store. At this same time, a police officer pulled up and [Appellant] told Stewart to stop being disrespectful. When the police officer left, [Appellant] told Stewart, "You're not getting shit." In response Stewart said, "I'll show you what I want to do," and took out a gun. [Appellant] grabbed the gun and began to tussle with Stewart. During the struggle over the gun, one gunshot was fired into Stewart's leg. After a few more seconds of tussling, [Appellant] testified that he was able to bend Stewart's wrist before the gun went off again—this time striking Stewart as he fell backward. After the shooting, [Appellant] went home and placed the gun in his basement.

On cross-examination, [Appellant] admitted that instead of walking away from Stewart, he argued with him, that he was "getting loud" with Stewart, and that they were "egging" on each other. When Stewart took the gun out, [Appellant] claimed he had both hands on the gun and was pushing it down while Stewart pulled the gun closer to him.

Also on cross-examination, [the prosecutor] had [Appellant] physically demonstrate to the jury how Stewart and he tussled over the gun. Although [the prosecutor] did her best to place on the record the physical interaction between herself and [Appellant], the trial court recalls that the demonstration contradicted the medical evidence as to how Stewart was injured. In other words, the medical records indicated that the bullet entered Stewart's leg at the thigh and then traveled upward toward his abdomen.

> In contrast, according to [Appellant], the gun was pointed downward toward the sidewalk when the gunshot injured Stewart. Moreover, Detective [Patrick] Murray found no indication of a "strike mark" in the sidewalk, the absence of which refute[d] [Appellant's] claim that the gun was pointed downward when he opened fire.

Trial Court Opinion, 7/31/15, at 1-4 (citations omitted).

On September 12, 2014, a jury convicted Appellant of aggravated assault, two firearm violations, and possession of an instrument of crime.[2] On November 7, 2014, the trial court sentenced Appellant to a mandatory ten to twenty-term of imprisonment for his aggravated assault conviction, and an aggregate, consecutive term of ten years of probation for the remaining convictions. This appeal follows the trial court's denial of Appellant's post-sentence motion. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue:

1. Was the verdict based on insufficient evidence, in that [Appellant] proved self-defense and the Commonwealth failed to disprove self-defense beyond a reasonable doubt?

---

[2] 18 Pa.C.S.A. §§ 2702(a), 6106(a)(1), 6110.2(a), and 907, respectively. Following the jury guilty verdict, the trial court found Appellant guilty of possession of a firearm prohibited due to a prior conviction. 18 Pa.C.S.A. § 6106(a)(1).

Appellant's Brief at 4.[3]

Our standard of review is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Jones**, 886 A.2d 689, 704 (Pa. Super. 2005) (citations omitted), *appeal denied*, 897 A.2d 452 (Pa. 2006).

The Pennsylvania Crimes Code defines, in pertinent part, the concept of self-defense as follows:

---

[3] Although Appellant challenged the imposition of the mandatory minimum due to a prior conviction pursuant to 42 Pa.C.S.A. § 9714(a), he now concedes that this issue is meritless in light of our Supreme Court's recent decision in **Commonwealth v. Reid**, 117 A.3d 777 (Pa. 2015).

**§ 505. Use of force in self-protection.**

**(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.—**

\*\*\*

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows he can avoid the necessity of using such force with complete safety by retreating[.]

18 Pa.C.S.A. § 505.

This Court has recently summarized:

According to our Supreme Court, the justified use of deadly force requires:

a) The actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Harris*, 542 Pa. 134, 137, 665 A.2d 1172, 1174 (1995). The defendant has no "burden to prove" his self-defense claim. *Commonwealth v. Torres*, 564 Pa. 219, 224, 766 A.2d 342, 345 (2001). The Supreme Court explained the evidentiary burdens as follows:

> While there is no burden on a defendant to prove the [self-defense] claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Id.* (internal citations omitted). *See also Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa. Super. 2008) (stating same standard). If the defendant properly raises "self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." *Commonwealth v. McClendon*, 874 A.2d 1223, 1229-30 (Pa. Super. 2005).

> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

*Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa. Super. 2008), *appeal denied*, 600 Pa. 743, 964 A.2d 894 (2009) (quoting *McClendon*, supra at 1230). The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa. Super. 2000), *appeal denied*, 566 Pa. 657, 782 A.2d 542 (2001)*.* The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe he was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save himself

from that danger. ***Commonwealth v. Sepulveda***, 618 Pa. 262, 288-89, 55 A.3d 1108, 1124 (2012).

***Commonwealth v. Smith***, 97 A.3d 782, 787 (Pa. Super. 2014).

In ***Smith***, this Court further discussed situations like the present case, when the defendant's own testimony is the only evidence of self-defense:

> When the defendant's own testimony is the only evidence of self-defense, the Commonwealth must still disprove the asserted justification and cannot simply rely on the jury's disbelief of the defendant's testimony:
>
> > The "disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact." The trial court's statement that it did not believe Appellant's testimony is no substitute for the proof the Commonwealth was required to provide to disprove the self-defense claim.
>
> ***Commonwealth v. Reynolds***, 835 A.2d 720, 731 (Pa. Super. 2003) (quoting ***Torres***, ***supra***). If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to "reject or accept all, part or none of the testimony of any witness." ***Commonwealth v. Gonzales***, 415 Pa. Super. 564, 609 A.2d 1368, 1370 (1992). The complainant can serve as a witness to the incident to refute a self-defense claim. ***Reynolds***, ***supra***. ***See also Commonwealth v. Hall***, 574 Pa. 233, 242, 830 A.2d 537, 542-43 (2003) (holding defendant's own testimony that shooting was accidental was ineffective because there was adequate circumstantial evidence to prove he pointed gun in direction of victim and discharged it). "Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a [fact-finder] is not required to believe the testimony of the defendant who raises the claim." ***Commonwealth v. Bullock***, 984 A.2d 818, 824 (Pa. Super. 2008).

***Smith***, 97 A.3d at 788.

In this case, the trial court concluded that the Commonwealth disproved Appellant's claim of self-defense, explaining as follows:

> Here, the evidence supports and the jury believed that [Appellant] used more force than necessary to save himself from death. [Based on the evidence presented and the demeanor of the witnesses at trial, the jury's credibility determination should stand because there is no basis to disturb them on appeal. The jury found the Commonwealth's evidence to be credible and discredited Appellant's testimony.] Appellant was carrying a gun in his shorts when he approached Stewart, pointed a gun to his face, and stated, "What's up now, old head?" Stewart was not even facing [Appellant] as [Appellant] approached him. [Appellant's] own fiancée admitted in her testimony that Stewart was on the defensive side of the argument. After Officer Dangler left the scene, Stewart—not [Appellant]—began to walk away. [Appellant] admitted that he stayed and that they were "egging" each other on. As Stewart was screaming at [Appellant], [Appellant] ran toward him, pushed his head toward the ground, and shot Stewart in the leg.
>
> During this encounter, Stewart offered no physical resistance and made no threats to [Appellant]. Instead, Stewart began to walk away after Officer Dangler left and was only yelling at [Appellant]. It was only after [Appellant] ran toward Stewart and shot him in the leg that Stewart attempted to shove [Appellant] off of him to avoid further violence. *See Commonwealth v. Chine*, 40 A.3d 1239 [(Pa. Super. 2012)] (rejecting self-defense claim because the defendant shot an unarmed victim who he thought would retrieve a weapon not in direct proximity to their verbal argument).
>
> Therefore, there is sufficient evidence that the Commonwealth proved beyond a reasonable doubt that [Appellant] unreasonably used more force than necessary to save himself from death.
>
> ***
>
> Here, the evidence [also] supports and the jury believed that [Appellant] violated his duty to retreat. [Appellant]

was presented with at least two opportunities to retreat in complete safety. First, [Appellant] could have left the scene with his fiancée after Officer Dangler investigated. Instead of following his fiancée, who left the scene unscathed, [Appellant] admitted to lingering and "egging on" Stewart. Second, [Appellant] had another opportunity to leave the scene when Stewart began to walk away while yelling at him. Instead of walking to his home and ending the argument, [Appellant] ran toward Stewart and fired multiple gunshots at Stewart, striking him once in the leg.

Moreover, there is no evidence that [Appellant] was blocked by anyone from safely retreating, or that, in doing so, [Appellant] would have increased his exposure to harm. To the contrary, [Appellant] was easily able to escape home after he shot Stewart, which is evidence that he knew that an avenue of safe retreat was available. *See Commonwealth v. Ventura*, 975 A.2d 1128 [(Pa. Super. 2009)] (rejecting the defendant's self-defense claim because an avenue of retreat was possible that would not have exposed him to additional harm).

As a result, there is sufficient evidence that the Commonwealth proved beyond a reasonable doubt that [Appellant] failed to utilize an avenue of safe retreat as required.

Trial Court Opinion, 7/31/15, at 7-9 (footnote omitted).

Our review of the record supports the trial court's conclusions. In addition, we further note that, through its witnesses, the Commonwealth established that Appellant provoked the encounter which actually led to the shooting. Specifically, Stewart, as the complainant, refuted Appellant's version of the incident, *Smith*, *supra*, and his description of the incident was corroborated in part by testimony from Marquita Lee. Lee was accompanying Stewart when Appellant approached with a gun in his waistband.

- 10 -

In arguing to the contrary, Appellant wholly relies upon his version of the incident. *See* Appellant's Brief at 23-25. Given the guilty verdicts, the jury did not believe Appellant's version of the incident. Moreover, while Appellant asserts there was "conflicting evidence as to whether [Stewart] had been intoxicated at the time of the incident[,]" he offers no further explanation why this fact, even if true, would alter the Commonwealth's ability to disprove Appellant's self-defense claim. *Id.* at 24.

Finally, Appellant presents several arguments regarding the sufficiency of the evidence supporting one or more of his firearm convictions. *Id.* at 25. Because Appellant raises these claims for the first time on appeal, they are waived and we need not address them further. *See generally*, Pa.R.A.P. 302(a).

In sum, because our review of the record supports the trial court's conclusion that the Commonwealth disproved Appellant's self-defense claim beyond a reasonable doubt, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2016