609 A.2d 1368

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Antonio GONZALES, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 12, 1991.

Filed May 28, 1992.

Reargument Denied July 23, 1992.

John B. Elbert, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before MONTEMURO, HUDOCK and BROSKY, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence imposed upon Appellant after he was convicted, at the conclusion of a non-jury trial, of murder in the third degree.[1] Timely filed post-verdict motions were denied by the trial court and Appellant was sentenced to the mandatory minimum of life imprisonment as required by 42 Pa.C.S. § 9715 (Purdon 1982) (Life imprisonment for homicide). This appeal followed in which Appellant raises three instances of trial court error. We affirm.

Appellant first claims that the evidence was insufficient to sustain his third degree murder conviction on the basis that the Commonwealth failed to prove malice. Evidence is sufficient to support a conviction so long as the fact-finder reasonably could have determined that every element of the offense was established beyond a reasonable doubt. *Commonwealth v. Syre*, 507 Pa. 299, 489 A.2d 1340 (1985). In making this determination, a reviewing court must consider the evidence in the light most favorable to the Commonwealth, as verdict winner, and must draw all reasonable inferences therefrom in favor of the Commonwealth. *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989). Malice is a necessary element of proof to support a conviction of murder in the third degree. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068

---

1. 18 Pa.C.S. § 2502(c) (Purdon 1983).

(1978), *cert. denied,* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978); *Commonwealth v. Austin,* 394 Pa.Super. 146, 575 A.2d 141 (1990). Malice is a legal term that encompasses not only ill will, but also wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty. *Commonwealth v. Hunter,* 381 Pa.Super. 606, 554 A.2d 550 (1989). Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body. *Id.*

At trial, the Commonwealth and Appellant presented divergent testimony regarding the events leading to the killing in question. The two versions of the events which transpired prior to the killing may be summarized as follows:

The Commonwealth's version of the events was given through the testimony of Jose Rosario (Rosario). Rosario testified that he and the victim, Jesus Rodriguez (Rodriguez), were crossing the street when an automobile sped by, nearly hitting Rosario. Rosario exchanged expletives with the occupants of the vehicle, Appellant and Bienviendo Morales (Morales). Thereafter, Appellant and Morales alighted from the automobile, Appellant wielding a screwdriver and Morales carrying a baseball bat. Appellant threatened to stab Rosario and Rodriguez with the screwdriver. Appellant and Morales then exchanged the screwdriver and the bat, whereupon Appellant walked around the back of the automobile and struck Rodriguez on the head with the bat. After striking the blow, Appellant and Morales fled in the automobile.

Appellant's version of the events is markedly different. Appellant testified that Rosario jumped in front of the automobile in which he and Morales were riding and that Rodriguez was knocking on the side passenger window asking Appellant and Morales if they wanted to buy drugs. Appellant and Morales refused the offer and drove to the home of Appellant's girlfriend. Shortly after he left the home of his girlfriend, someone called Appellant to the corner. Appellant testified that Rodriguez came towards

him wielding a baseball bat and swung it at Appellant. Appellant stepped back and then grabbed the bat and shoved Rodriguez. Appellant stated that he struck Rodriguez in an act of self-defense because the latter was coming toward him and he (Appellant) was afraid.

The essence of Appellant's argument is that the trial court, sitting as fact-finder, should have believed his version of the events because his version supports his claim of self-defense. Thus, Appellant asserts, the Commonwealth failed to prove legal malice because it did not disprove self-defense beyond a reasonable doubt.

It is true that the Commonwealth must disprove a claim of self-defense beyond a reasonable doubt. *Commonwealth v. Hunter, supra.* And it is also the case that a successful claim of self-defense negates the element of malice, as the two concepts are mutually exclusive. *Commonwealth v. Hinchcliffe, supra; Commonwealth v. Heatherington,* 477 Pa. 562, 385 A.2d 338 (1978). To negate a claim of self-defense, the Commonwealth is required to prove any one of the following: (1) the defendant's belief that it was necessary to kill the victim in order to protect himself from death or serious bodily harm was unreasonable; (2) the defendant provoked the use of force; or (3) the defendant had a duty to retreat and could safely do so. *Commonwealth v. Hunter, supra.*

Appellant's sufficiency claim necessarily relies on a finding that his version of the events in question is more credible than the testimony presented by the Commonwealth. As fact-finder, the trial court was free to reject or accept all, part, or none of the testimony of any witness. *Commonwealth v. London,* 461 Pa. 566, 337 A.2d 549 (1975); *Commonwealth v. Hunter, supra.* Serving in this capacity, the trial court rejected Appellant's version of the events. The trial court's disbelief of Appellant's assertion of self-defense obviates the need for the Commonwealth to disprove the claim. Thus, we need only determine whether the Commonwealth proved malice beyond a reasonable doubt.

 Upon review of the record, we are satisfied that the Commonwealth presented sufficient evidence to support the element of malice. The testimony which the trial court credited reveals that Appellant first wielded a screwdriver with which he threatened to stab the victim and Rosario, and then brandished a baseball bat with which he clubbed the victim to death. Moreover, the trial court could properly draw an inference of malice from Appellant's intentional use of the baseball bat upon the victim's head. *See Commonwealth v. Hinchcliffe, supra.* Appellant's first claim is without merit.

Appellant next claims that the trial court erred in refusing to grant a mistrial when the prosecutor attempted to introduce irrelevant and prejudicial evidence of Appellant's alleged involvement in narcotics distribution. We disagree.

 The decision whether to grant a mistrial is within the sound discretion of the trial court and will not be reversed absent a flagrant abuse of that discretion. *Commonwealth v. Meadows,* 381 Pa.Super. 354, 553 A.2d 1006 (1989), *alloc. den'd.,* 524 Pa. 618, 571 A.2d 381. The admission or exclusion of evidence, insofar as its relevance is concerned, is a matter committed to the trial court's discretion. Absent an abuse of discretion or an error of law, the trial court's ruling will not be disturbed on appeal. *See, e.g., Commonwealth v. Edward Davis,* 394 Pa.Super. 591, 576 A.2d 1005 (1990). Moreover, when the court is sitting as fact-finder it is presumed that inadmissible evidence is disregarded and that only relevant and competent evidence is considered. *Commonwealth v. Kevin Davis,* 491 Pa. 363, 421 A.2d 179 (1980). In a non-jury trial, the court is presumed to have disregarded evidence too prejudicial to be considered by a jury, thus assuming that the court in a bench trial would follow the very instructions which it would otherwise give to a jury. *Commonwealth v. Wright,* 234 Pa.Super. 83, 87–89, 339 A.2d 103, 106 (1975) (citing *Commonwealth v. Mangan,* 220 Pa.Super. 54, 281 A.2d 666 (1971)). *Cf. Commonwealth v. Kevin Davis, supra* (court sitting as fact-finder expressly stated that it had disregard-

ed appellant's prior criminal record in reaching verdict); *cf. Commonwealth v. Stantz*, 353 Pa.Super. 95, 509 A.2d 351 (1986) (appeal denied) (bias or hostility towards defendant as a result of intemperate prosecutorial remarks made in closing are lessened or even eliminated when trial court sits as fact-finder).

The evidence which Appellant maintains was improperly introduced concerned Appellant's alleged involvement in a narcotics distribution organization known as the OK Corral. Appellant also objects to the prosecutor's reference to a nickname used by Appellant written next to the initials "OKC" which appeared in a photograph depicting the area where the killing occurred. The nickname and initials "OKC" appeared on a wall depicted in the photograph. In addition, Appellant contends that the prosecutor improperly elicited a response from a police officer indicating that an area near the scene of the killing was a narcotics distribution area. This response was elicited shortly after a witness testified that he had seen Appellant in that area.

As to the first alleged impropriety, Appellant called witness Jose Torres who gave a version of the killing similar to the one proffered by Appellant and, thus, favorable to the defense. Upon cross-examination, the prosecutor asked this witness if he had sold drugs in the area of the killing and if he had been a member of an organization called the OK Corral. The witness denied selling drugs in that area but admitted that he sold drugs in another area. However, the witness did not respond to the question asking whether he was a member of the OK Corral because both defense counsel moved for a mistrial, which the court denied.

With regard to the alleged improper reference to the nickname and the initials "OKC" on the wall depicted in the photograph, the prosecutor attempted to demonstrate that Appellant was involved in narcotics distribution in the area of the killing. The Commonwealth introduced this evidence after Appellant testified on cross-examination that he was offended and upset that Rosario and the victim asked him

and his co-defendant to buy drugs. Appellant testified that his response to Rosario and the victim at that time was that he did not buy or have any connection with narcotics.

As to the elicitation from a police officer witness that an area near the killing was frequented by Appellant and was a narcotics distribution area, our review of the trial transcript discloses that the prosecutor's questioning did not elicit or exploit such reference.

[BY THE COMMONWEALTH]

Q. Did you have contact with [Appellant] in that area? Did you see him in that area is what I'm saying. I don't mean arrests or anything like that. Did you see him in that area?

A. Yes, I had numerous contacts with [Appellant] in the area of 7th and Russell, Marshall and Tioga, 7th and Tioga, all in that area there.

Q. Now, you said 7th and Russell, you're familiar with that. You said 7th and Tioga. Where is that in relation to 7th and Russell?

A. 7th and Tioga is about three quarters of a city block north of 7th and Russell.

Q. *And what's at 7th and Tioga, if anything, unusual?*

A. *7th and Tioga is the center spot of a high narcotics area.*

Q. *Wait, wait.*

THE COURT: *That's not what he was asking.*

MR. FITZPATRICK [Counsel for co-defendant]: *Move to strike.*

THE COURT: *That's granted.* You may lead the witness.

N.T., p. 316; emphasis supplied. It is apparent from the above exchange that neither the Commonwealth nor the court expected the witness' volunteered, non-responsive answer to the query concerning Seventh and Tioga. The court immediately struck the witness' response; the Commonwealth did not exploit the reference to the area as a

narcotics distribution area; further questioning and response were limited to the subject of Appellant's general presence at Seventh and Tioga and at Marshall and Tioga.

Our review of the objected-to conduct of the prosecutor reveals that the court denied Appellant's motion for a mistrial with respect to the question addressed to Jose Torres regarding his involvement with the OK Corral. However, the court struck this reference as well as the reference to illegal activity in an area frequented by Appellant and near the killing. Likewise, the court disallowed continued questioning concerning the nickname and initials appearing in the photograph, thus evidencing its acknowledgement of the impropriety in permitting the continued questioning and references.

Given the above standards relating to inadmissible evidence in a non-jury trial, we are unpersuaded that the court erred in failing to grant a mistrial, for the court, by its actions, evinced a disregard for any improper references or questioning. Moreover, as we have already noted, the court struck the references to the nickname and the initials depicted in the photograph, and to an area frequented by Appellant as being a narcotics distribution area. The court also refused to permit further questioning regarding Appellant's alleged involvement in the OK Corral. We can find no indication in the record that the court below did not conduct a fair and impartial trial and did not properly considered only claim to the contrary is, therefore, without merit.

▉ Appellant's final claim is that the court below erred in applying the mandatory recidivist sentencing provisions of 42 Pa.C.S.A. § 9715(a) (Purdon 1982). This section requires the court to impose a term of life imprisonment upon one who stands convicted of murder in the third degree and who has been previously convicted of murder or voluntary manslaughter at any time. Appellant concedes that he has a previous conviction for murder in the third degree. He contends, however, that the imposition of sentence under § 9715(a) is improper in this case because he had not yet

been convicted of the previous homicide when he committed the instant offense. We do not agree. Section 9715 reads, in pertinent part:

**§ 9715. Life imprisonment for homicide**

**(a) Mandatory life imprisonment.**—Notwithstanding the provisions of section 9712 (relating to sentences for offenses committed with firearms), 9713 (relating to sentences for offenses committed on public transportation) or 9714 (relating to sentences for second and subsequent offenses), any person convicted of murder of the third degree in this Commonwealth who has previously been convicted *at any time* of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, *notwithstanding any other provision of this title or other statute to the contrary.*

**(b) Proof at sentencing.**—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. *The applicability of this section shall be determined at sentencing....*

(Emphasis supplied.) Appellant was previously convicted of murder in the third degree in July 1989 for a killing which occurred in May 1988. The instant offense was committed on December 2, 1988. Neither the court nor the Commonwealth has challenged the existence of the previous conviction or the fact that the instant offense was committed before Appellant's conviction for the previous homicide.

When determining the meaning of any particular recidivist statute or section, it is the language of that statute or section, and no other, which must be interpreted and applied. Hence, decisions of this Court dealing with other sections of the Judiciary Code and the Motor Vehicle Code are not controlling. *See, e.g., Commonwealth v. Dickerson,* 404 Pa.Super. 249, 590 A.2d 766 (1991), *alloc. granted,* 528 Pa. 627, 598 A.2d 281 (interpretation of the

recidivist penalty provisions of 42 Pa.C.S. § 9714(b)(2)); *Commonwealth v. Beatty*, 411 Pa.Super. 450, 601 A.2d 1253 (1992) (*en banc*) (interpreting recidivist provisions of 75 Pa.C.S. § 3731(e)); *Commonwealth v. Eyster*, 401 Pa.Super. 477, 585 A.2d 1027 (1991) (*en banc*) (previous conviction must antedate current offense for purpose of application of enhanced prior record score of sentencing guidelines). Section 9715(a) clearly states that it shall be operative "notwithstanding [the provisions of] [§] 9714" and "any other provision of this title or other statute to the contrary."

The above-cited subsections of § 9715 are clear and unambiguous. Subsection (b) clearly states that § 9715 becomes applicable at the time of sentencing. Thus, if at that time, the defendant's record shows a prior conviction for murder or voluntary manslaughter which occurred at any time, that person shall be sentenced to a term of life imprisonment. "At any time" refers not only to a prior conviction which may have occurred more than seven years prior to the sentencing offense, but also clearly means that the order of commission, or conviction, of the offenses requiring a life sentence is immaterial so long as, at the time of sentencing on a third degree murder conviction, a defendant has been convicted on another charge of murder or voluntary manslaughter. The plain language of § 9715(a) and (b) cannot be interpreted otherwise. Appellant's claim to the contrary is, therefore, without merit.

Judgment of sentence is affirmed.

BROSKY, J., files a concurring and dissenting opinion.

BROSKY, Judge, concurring and dissenting.

I am in agreement with my colleagues' disposition on all issues save the last.

As his final issue, appellant maintains that the sentencing court erred in applying the mandatory recidivist sentencing provisions of 42 Pa.C.S.A. § 9715(a). This section requires the court to impose a term of life imprisonment upon one

who has been convicted of murder in the third degree who has been previously convicted of murder or voluntary manslaughter at any time. Appellant concedes that he has a previous conviction for murder in the third degree. He contends, however, that the imposition of sentence under Section 9715(a) is improper in this case because he had not yet been convicted of the previous homicide when he committed the instant offense. Because the jurisprudence currently prevailing in this Commonwealth supports appellant's position, I would be inclined to vacate the judgment of sentence of life imprisonment imposed pursuant to Section 9715(a) and remand for resentencing. Section 9715(a) reads, in relevant part, as follows:

### § 9715. Life imprisonment for homicide

**(a) Mandatory life imprisonment.—** ... [A]ny person convicted of murder of the third degree in this Commonwealth who has previously been convicted *at any time* of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, notwithstanding any other provision of this title or other statute to the contrary.

Emphasis supplied. Appellant was previously convicted of murder in the third degree in July 1989. The instant offense was committed on December 2, 1988. Neither the trial court nor the Commonwealth has challenged the existence of the previous conviction or the fact that the instant offense was committed before conviction for the previous homicide had obtained.

In *Commonwealth v. Dickerson*, 404 Pa.Super. 249, 590 A.2d 766 (1991), this court was faced with a similar issue concerning the interpretation of the recidivist penalty provisions of 42 Pa.C.S.A. § 9714(b)(2). Section 9714 provides for the imposition of a mandatory minimum sentence of five years' imprisonment for a person who has been convicted of, *inter alia*, third-degree murder who had been previously convicted of any one of a number of crimes of violence set

forth in subsection (b)(1) of the statute. Section 9714(b) reads, in part, as follows:

**(b) Prior convictions for crimes of violence.**—For the purposes of subsection (a) [the penalty provision], an offender shall be deemed to have prior convictions for crimes of violence if both of the following conditions hold:

(1) [Sets forth the specific crimes of violence for which the offender must have been previously convicted in order to invoke the mandatory recidivist penalty provisions of subsection (a)]

(2) The *previous conviction occurred within seven years of the date of the commission of the instant offense*.... A previous conviction shall include any conviction, whether or not litigation is pending concerning that conviction.

Emphasis supplied. The *Dickerson* court held that for the purpose of invoking this recidivist penalty statute, the previous conviction referred to in subsections (b)(1) and (2) must have antedated the commission of the current offense within the seven-year prescribed period. Appellant relies upon this court's decision in *Commonwealth v. Dickerson, supra,* to support his argument that the application of the mandatory recidivist penalty provision of Section 9715(a) to him was erroneous as he had not yet been convicted of the first homicide at the time when he committed the instant offense.

The trial court in the case at bar stated in its Opinion: "Section 9715 applied to 'any person ... who has previously been convicted *at any time* of murder....' " At 17; emphasis supplied by the trial court. However, the court provided no reasoning or analysis for its conclusion that Section 9715 applied instantly except to note that its "language is clear and unambiguous, [sic] and by its plain meaning applies to this [appellant]." *Id.* Appellant theorizes in his Brief to this court that the trial court interpreted the emphasized portion of the above statute to mean that the order of occurrence of a previous conviction and a current offense is irrelevant. In other words, the court

interpreted the words "at any time" to mean "in any order." In this regard, appellant further argues that the trial court was without the benefit of our decision in *Commonwealth v. Dickerson, supra,* in making its determination that Section 9715 applied to him.

I do not believe that the trial court's cognizance of the *Dickerson* case would have altered its decision. I agree with appellant that the court interpreted the "at any time" language of Section 9715(a) to mean "in any order" to contrast the open-ended time period in that statute with the seven-year previous conviction period set forth in Section 9714(b)(2). This seven-year time period, however, does not direct the order in which convictions must occur to invoke the recidivist penalty provisions of Section 9714(a). Rather, it merely formulates a time frame or a "look-back" period within which a prior conviction may be considered for the purpose of invoking the recidivist provisions of the statute. *Cf. Commonwealth v. Kearns,* 365 Pa.Super. 13, 528 A.2d 992 (1987) (seven-year period for application of recidivist penalty provision of 75 Pa.C.S.A. § 3731(e) measured from date of prior conviction to date of commission of second offense; second offense must occur within seven-year period of previous conviction).

The "at any time" language appearing in Section 9715(a), on the other hand, does not call for an unstructured, see-saw approach in determining if a prior conviction exists for the purpose of invoking the recidivist provisions of the statute. The purpose of this language is not to permit a court to determine whether a prior conviction exists without regard to the order in which a prior conviction and the commission of a current offense occurred. Rather, it allows for an unlimited time frame or "look-back" period between commission of the instant offense and conviction for the prior offense for the purpose of determining the applicability of the recidivist penalty provision to a particular case. It does not do away with the requirement that the prior conviction predate the commission of the current

offense. In essence, this language, without more, merely extends the "look back" period.

In conjunction with the phrase "at any time", the statute refers to "previous convictions", *id.,* subsection (b), and to one "who has previously been convicted at any time", *id.,* subsection (a). Our supreme court has stated: "When the term 'conviction' is used in a statute, it means 'the ascertainment of the guilt of the accused and judgment thereon by the court' ". *Commonwealth v. Kimmel,* 523 Pa. 107, 113, 565 A.2d 426, 428 (1989), *citing Commonwealth v. Minnich,* 250 Pa. 363, 95 A. 565 (1915). Similarly, " '[v]iolating' in the common usage of the term refers to the time when the offensive conduct takes place, and it should not be confused with the point where the judicial process judges a violator to be accountable and then administers its punishment in accordance with due process." *Id.* Hence, it is apparent from the foregoing definitions that a previous conviction implicates a finding of guilt on the record. Therefore, I would agree with appellant that the mandatory recidivist penalty provisions of Section 9715(a) were improperly applied in this case. At the time of the commission of the instant offense, appellant had not yet earned the status of recidivist offender, for he had not yet met the threshold requirement of this distinction, i.e., a previous conviction for an earlier committed homicide.

This interpretation, moreover, is in accord with the jurisprudence currently prevailing in our appellate courts on the subject of recidivist penalties. *See Commonwealth v. Kimmel, supra* (recidivist penalty provisions of 75 Pa.C.S.A. 3731(e) which calls for mandatory enhanced sentence for one convicted of driving under the influence who has been previously convicted of violating Section 3731 requires that previous conviction antedate commission of current offense). *Accord Commonwealth v. Beatty,* 411 Pa.Super. 450, 601 A.2d 1253 (1992) (*en banc*); *Commonwealth v. Ashton,* —— Pa.Super. ——, 607 A.2d 1120 (1992) (*en banc* judgment order); *Commonwealth v. Turner,* —— Pa.Super. ——, 607 A.2d 1127 (1992) (*en banc* judgment order); *Com-*

*monwealth v. Smith,* —— Pa.Super. ——, 607 A.2d 1126 (1992) (*en banc* judgment order); *Commonwealth v. Eck,* 411 Pa.Super. 465, 601 A.2d 1261 (1992) (*en banc*); *Commonwealth v. Tobin,* 411 Pa.Super. 460, 601 A.2d 1258 (1992) (*en banc*); *Commonwealth v. Kearns, supra. See also Commonwealth v. Eyster,* 401 Pa.Super. 477, 585 A.2d 1027 (1991) (*en banc*) (previous conviction must antedate current offense for purpose of application of enhanced prior record score of Sentencing Guidelines).

I would vacate the judgment of sentence entered in this case and remand for resentencing.