J-S18022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TAARIQ THOMAS | |
| Appellant | No. 828 EDA 2016 |

Appeal from the Judgment of Sentence dated January 15, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0003165-2015

BEFORE: PANELLA, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED JUNE 26, 2017**

Appellant, Taariq Thomas, appeals from the judgment of sentence following a jury trial and convictions for aggravated assault, simple assault, and recklessly endangering another person.[1]  Appellant challenges the sufficiency and weight of the evidence, as well as the discretionary aspects of his sentence.  We affirm.

We present the facts as set forth in the trial court's opinion:

> On April 7, 2015, Allentown Police responded to 135 S. 5th Street for a report of an assault.  Upon arrival, officers spoke with [Appellant], who directed the officers to Apartment 3.  There, officers discovered Jonathan Brown with an injury to the right side of his head.  Mr. Brown was bleeding from the wound and was holding a cloth in his hand.  Brown was unable to respond to the officers, and was going in and out of

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), and 2075.

consciousness. Brown was transported to Lehigh Valley Hospital. [Appellant] admitted to police he struck Brown in the head with a baseball bat.

[Appellant] was taken to Allentown Police Headquarters and gave an audio/videotaped statement[, which was played at trial]. According to [Appellant], his then-girlfriend, Chelsea O'Toole, was texting with her cousin, Mr. Brown, and made plans for Brown to come over to their apartment to hang out. [Appellant] said he was in the bathroom when Brown arrived. [Appellant] heard unusual noises and heard O'Toole say, "Babe," so he grabbed a baseball bat from the bathroom and came out. He saw Brown holding O'Toole in what he described as a bear hug. He said it looked like O'Toole was trying to get away, so he hit Brown in the head with the bat. Brown turned around, and [Appellant] hit him again. [Appellant] believed Brown was being suspicious when texting with O'Toole, and thought Brown had a romantic interest in O'Toole.

Ms. O'Toole testified at [Appellant's] trial. According to O'Toole, she did not ask Mr. Brown to come to the apartment. O'Toole was shown text messages from her phone that showed Brown was invited over. When asked about them, she advised that the phone was in her name, but [Appellant] had it with him at all times and did not allow her to use it.[2] O'Toole said when Brown knocked on the door, she opened it and asked Brown what he was doing there. Brown responded, "I came to chill." O'Toole said Brown put his hands on her shoulder, so she said, "Babe?"[3] O'Toole indicated she stated it like a question, because she did not know what was going on. She testified that [Appellant] came out and immediately hit Brown with the bat. O'Toole testified that Brown did not have her in a bear hug, and that she was out of Brown's reach when [Appellant] came out of the bathroom and hit Brown.

_____

[2] Ms. O'Toole denied writing the text messages and testified that Appellant possessed the phone at the time the text messages were sent. N.T. Trial, 12/16/15, at 35.

[3] The trial court reported, "There was evidence presented at trial that Ms. O'Toole gave conflicting statements to police regarding how Brown grabbed her when he entered the apartment." Trial Ct. Op. at 3.

Trial Ct. Op., 5/19/16, at 1-3. Ms. O'Toole denied there was any fighting, shoving, or struggling with Mr. Brown. N.T. Trial, 12/15/15, at 66, 92-93. Mr. Brown was unarmed and was carrying only a water bottle. *Id.* at 94. "Following the incident, Ms. O'Toole and [Appellant] left the apartment, and [Appellant] called the police. Mr. Brown suffered severe head trauma, including a fractured skull and bleeding on the brain, and has permanent cognitive impairments." Trial Ct. Op. at 3.

With respect to Ms. O'Toole's conflicting statements to the police, Appellant cross-examined Ms. O'Toole about a police report, in which the officer indicated that Ms. O'Toole said Mr. Brown tried to molest her. N.T., 12/15/15, at 72. Ms. O'Toole denied making that statement. *Id.* at 74. Ms. O'Toole also denied telling the police that Mr. Brown "was trying to get me." *Id.* at 77. In a subsequent statement, Ms. O'Toole admitted telling the police that Mr. Brown grabbed her and she "had a feeling" Mr. Brown was (1) going to take advantage of her, (2) being perverted, and (3) aggressive. *Id.* at 80-81.[4]

Following Appellant's conviction by the jury, the court ordered a pre-sentence investigation ("PSI") report. On January 15, 2016, the court held a sentencing hearing at which the court acknowledging reviewing all of the information in the PSI report. N.T. Sentencing Hr'g, 1/15/16, at 4. The

---

[4] Mr. Brown briefly testified: he had no memory of the incident or what prompted him to go to the apartment.

court discussed the sentencing guidelines and heard testimony from several witnesses. The Commonwealth recommended a sentence of ten to twenty years' incarceration and Appellant suggested imprisonment of six to fifteen years, which was identical to the recommended sentence in the PSI. The court sentenced Appellant to a term of six to twenty years' incarceration, which is in the standard range for convictions involving use of a deadly weapon. Appellant filed a post-sentence motion challenging, among other things, the weight of the evidence. Following the court's denial of his post-sentence motion, Appellant perfected this appeal,[5] in which Appellant raises the following issues:

> Whether the evidence was sufficient to sustain [Appellant's] convictions for aggravated assault, simple assault and recklessly endangering another person when [Appellant] was acting in defense of another?

> Was the verdict against the weight of all the evidence in regards to the proof of whether or not [Appellant] was properly convicted of aggravated assault, simple assault and recklessly endangering another person when [Appellant] was acting in defense of another?

> Whether the lower court abused its discretion by imposing sentences [sic] which were manifestly unreasonable as the court failed to fully state its reasons for the imposition of the

---

[5] On March 9, 2016, Appellant filed his notice of appeal, which stated that the court denied his post-sentence motion on February 26th. The court's order denying the post-sentence motion was dated February 26, 2016, but the court did not docket it until March 10, 2016. Appellant's appeal is properly before us. **See** Pa.R.A.P. 905(a)(5) (stating, "notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

sentences or otherwise failed to review all appropriate factors as required by law?

Appellant's Brief at 5-6.

In addressing a sufficiency challenge, we adhere to the following standard of review:

> A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

***Commonwealth v. McFadden***, 156 A.3d 299, 303 (Pa. Super. 2017) (citation omitted).

Initially, Appellant highlights the testimony of Ms. O'Toole and the testimony of the police recounting Ms. O'Toole's statements that, in Appellant's view, establish Ms. O'Toole's belief that Mr. Brown was at the apartment for "inappropriate reasons." Appellant's Brief at 15. Appellant also emphasizes that in his taped statement to the police, which was played for the jury, he recounted that he thought Ms. O'Toole was in danger and trying to escape from Mr. Brown. He points out that he contacted the police and was cooperative.

Appellant reasons:

> There is little question that, based upon the conflicting statements given by Ms. O'Toole, there might be some confusion about what actually occurred. However, there should be no doubt that [Appellant], upon exiting the bathroom, would have

had reason to believe that his girlfriend was in danger from this unexpected visitor to their apartment. . . . The Commonwealth can only argue the speculation of which statement made by Ms. O'Toole accurately reflects what really transpired and the confusion elicited by the conflicting statements from Ms. O'Toole rather than any hard evidence that negates [Appellant]'s defense.

Appellant's Brief at 16. In sum, Appellant contends the Commonwealth presented "little direct evidence to contradict" his reasonable belief that Ms. O'Toole was in danger. *Id.* at 16.

Defense of others falls under the defense of justification, which is a complete defense to criminal liability. *See* 18 Pa.C.S. § 502. Section 506(a) of the Code provides:

The use of force upon or toward the person of another is justifiable to protect a third person when:

(1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3) the actor believes that his intervention is necessary for the protection of such other person.

*Id.* § 506(a). Section 505(b) limits the justification for using deadly force:

(2) The use of deadly force[6] is not justifiable under this section unless the actor believes that such force is necessary to protect

---

[6] "Deadly force" is defined as "Force which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury."
*(Footnote Continued Next Page)*

himself [or a third person] against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

> (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

> (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S. § 505(b).

"Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a [fact-finder] is not required to believe the testimony of the defendant who raises the claim." *Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014) (citation omitted). "If there are other witnesses . . . who provide accounts of the material facts, it is up to the fact finder to reject or accept all, part or none of the testimony of any witness." *Id.* (citation and internal quotation marks omitted). In addition to testimony,

> A number of factors, including whether complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident, are all relevant when determining the reasonableness of a defendant's belief that the use of deadly force was necessary to protect [a third

_____

*(Footnote Continued)*

18 Pa.C.S. § 501. In this case, Appellant struck Mr. Brown's head with a baseball bat at least twice.

[person] against death or serious bodily injuries. No single factor is dispositive.

*Id.* (citations omitted). But the Commonwealth, in order to disprove a claim of self-defense, must introduce some evidence contradicting it "and cannot simply rely on the jury's disbelief of the defendant's testimony." *Id.*

We conclude that the Commonwealth satisfied its burden here, and that Appellant's argument deals less with the Commonwealth's lack of proof than it does with his disagreement regarding the jury's findings of facts. In other words, "[t]he essence of Appellant's argument is that the . . . fact-finder[] should have believed his version of the events because his version supports his claim of self-defense." *Commonwealth v. Gonzales*, 609 A.2d 1368, 1370 (Pa. Super. 1992). "Appellant's sufficiency claim necessarily relies on a finding that his version of the events in question is more credible than the testimony presented by the Commonwealth." *Id.* But the jury was not required to agree with Appellant's version.

Viewing the evidence in the Commonwealth's favor, Appellant, pretending to be Ms. O'Toole, lured Mr. Brown over to the apartment. N.T. Trial, 12/16/15, at 35. After Mr. Brown, who was unarmed, arrived, Appellant hit Mr. Brown in the head with a baseball bat — twice. N.T. Trial, 12/15/15, at 94. Ms. O'Toole provided the jury with a version of the events leading up to that assault that was favorable to the Commonwealth. She testified that she did not fight or struggle with Mr. Brown. *Id.* at 66, 92-93. Further, she testified that she was out of Mr. Brown's reach and Mr. Brown

- 8 -

did not have her in a bear hug when Appellant exited the bathroom and struck Mr. Brown. Trial Ct. Op. at 3. The jury elected to believe Ms. O'Toole's testimony that she was not in danger and not trying to escape, notwithstanding Appellant's police statement to the contrary and the conflicting statements Ms. O'Toole gave to the police. *See Smith*, 97 A.3d at 788; *Gonzales*, 609 A.2d at 1370. Given this record, and in light of the jury's freedom to believe the Commonwealth's version of the facts over that of Appellant, we cannot hold that the Commonwealth failed to introduce evidence disproving Appellant's self-defense claim beyond a reasonable doubt. *See Smith*, 97 A.3d at 788.

Appellant next challenges the weight of the evidence. Our standard of review of a challenge to the weight of the evidence is as follows:

> Where the trial court has ruled on a weight claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, our review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (brackets, quotation marks, and internal citations omitted), *appeal denied*, 134 A.3d 56 (Pa.), *cert. denied*, 132 S. Ct. 106 (2016).

> A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. In this regard, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court.

*Id.* at 758–59 (citation and internal brackets omitted).

Appellant again refers this Court to Ms. O'Toole's conflicting testimony and reiterates that his police statement established his reasonable belief. Appellant's Brief at 18. After careful review, we conclude that the trial court correctly evaluated whether the evidence supporting the guilty verdict was so tenuous, vague, and uncertain that it would have shocked the trial court's conscience. We discern no abuse of discretion by the trial court in resolving Appellant's challenge to the weight of the evidence. *See Thompson*, 106 A.3d at 758.

Appellant lastly challenges the discretionary aspects of his sentence.

> A challenge to the discretionary aspects of a sentence is not appealable as of right. Therefore, before we may exercise jurisdiction to reach the merits of [the defendant's] claim, we must verify that [the defendant's] appeal is properly before this Court—that is, that his appeal was timely filed and that the issues he seeks to raise were properly preserved. If so, we must then determine whether [the defendant's] brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence pursuant to [Pa.R.A.P.] 2119(f), and whether that concise statement raises a substantial question that the sentence is appropriate under the sentencing code. Only if the appeal satisfies these requirements may we proceed to decide the substantive merits of [the defendant's] claim.

*Commonwealth v. Luketic*, ___ A.3d ___, ___, 2017 WL 2123441, *8 (Pa. Super. 2017) (footnote, citations, and some punctuation omitted).

Instantly, Appellant timely appealed and filed a post-sentence motion asserting his sentence was excessive. Appellant's brief also includes a Rule 2119(f) statement stating that the court failed to "adequately review the appropriate factors" set forth in the Sentencing Code and "failed to give any

meaningful consideration to those various factors other than the seriousness of the offense." Appellant's Brief at 10. Appellant's statement, however, does not raise a substantial question. *Commonwealth v. Ratushny*, 17 A.3d 1269, 1273 (Pa. Super. 2011) (noting, "an allegation that the sentencing court did not adequately consider various factors is, in effect, a request that this court substitute its judgment for that of the lower court in fashioning a defendant's sentence" (citation omitted)).[7] In any event, the court indicated that it reviewed the PSI report, and thus "we shall . . . presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Walls*, 926 A.2d 957, 967 n.7 (Pa. 2007) (citation omitted). Thus, Appellant does not satisfy the requirements set forth by this Court in *Luketic*. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[7] Appellant's Rule 2119(f) statement does not "specify where the sentence falls in relation to the sentencing guidelines." *See Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000).

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2017